Chief Justice Robertson
delivered the Opinion of the Court.
This writ of error is prosecuted to reverse a judgment obtained against the city of Maysville, by Christian Shultz, for four hundred and sixty two dollars, eighty seven cents, in an action of assumpsit, for cutting down and grading a street, at the instance and request of the Trustees, prior to the incorporation of the city.
The counsel for the plaintiff in error urges three objections to the judgment: they are — -first, that the action is not maintainable against the city; second, that the Circuit Court erred in deciding that a citizen of Maysville, was not a competent witness for the city, — and third, that it erred in refusing to instruct the jury, that, “if “ they believed that the dirt removed by the plaintiff, “ was valuable to the plaintiff, the jury ought to deduct “ what would be equivalent to such value, provided they “ should be of opinion that the dirt was applied to pur- “ poses useful and valuable to the plaintiff, and that it “ might have been as conveniently applied to fill a place “ in another part of the same street from which it was “ removed, which required filling, to make it of a proper “ grade with that part which was graded by the plain- “ tiff.”
These objections will now be considered, in the order in which they have been stated.
First. The basis of the argument in support of the ®ri°bjecti°n5 is °f a twofold character: first, that there is no legal identity between the city of Maysville and its predecessor the town oí Maysville; — and second, that the city is, therefore, under no legal obligations to pay the pre-existent debts of the town.
These positions are, in our opinion, altogether indefensible. Maysville, whether called town or city, is the *11 same. This is established by the statute of incorporation, and is judicially known. There has been no essential metamorphosis. Every thing which constitutes substantial identity remains the same. The only difference between the City and the Town of Maysville is in name and in power. One is corporate; the other was quasi corporate. One was represented by its trustees; the other is represented by its mayor and councilmen. A debt due by the people of the town of Maysville, is a debt due by the people of the -city of Maysville; and therefore a debt due by the town is the debt of the city. The nominal transmutation from town to city did not exonerate the community of Maysville from legal liability for its just debts contracted whilst it was represented by trustees, instead of a mayor and councilmen. By changing its title and its agents, it only shifted its authority and responsibilities from one set of organs to another. No change in its form of government can extinguish the obligations of a community or a nation. An unpaid debt of republican France is equally the debt of regal France. The corporation of Maysville is but the community of Maysville with a legal name and legal individuality. The “city” is no new and independent corporation; it is but an extension and modification of the superseded quasi corporation — the town. It is certainly the duty of the city to pay the debts of the town; and the law therefore, will raise an implied promise by the city, to pay whatever the town was legally liable to pay, and had not paid, when it changed its name. Wherefore it seems to this court that this action is maintainable against the city of Maysville.
To the general íerested^witness is incompetent, tions.^The true testis: “whether consistent with r|Sht and justice, that, ma given class of cases, a person interested in the event of the suit, should, or should not, bo allowed to testify in favor of his interest.” An inhabitant of a city ( e. g. Maysville) is not incompetent as a witness for the city — because of the community, remoteness and contingency of his interest. The case of astockholder is different.
Second. In support of the opinion of the Circuit Judge ■on the second point, the defendant’s counsel insists, that a tax-paying citizen of Maysville, such as the rejected witness, is incompetent as a witness for the city, because a judgment against the corporation may increase the burthen on himself*
The citizens of Maysville are not personally parties. ,,,, ,, . . , r . , r, 11 they were, they might, on that ground alone, be m- *12 competent as witnesses, and the declarations of any one of them would be evidence against the city. They are then not incompetent on the ground of being parties.
Nor are they, in our opinion, incompetent in consequence of interest in the event of the suit.
Though justice and policy forbid that witnesses should generally be permitted to testify in favor of their own interests, still the interdiction is not, and should not be universal. Both justice and policy require that in some peculiar cases, interested persons should be permitted to testify on the side of their interest. The true test for determining the competency of an interested witness, is whether it would be more consistent with right and justice, that in a given class of cases, a person interested in the event of the suit should, or should not, be allowed to testify in favor of his interest.
The cases of exception from the general rule as to the incompetency of interested witnesses, are generally arranged into two classifications: that is, first, that class of cases which, on account of their peculiar character, are generally insusceptible of satisfactory proof by witnesses altogether disinterested; second, that class in which the interest is so universal or common as to render it generally improbable that any other than some one of those who have a common interest should possess a personal knowledge of the fact required to be proved.
The business of a factor may illustrate the first class; the interest possessed by every constituent member of a large community, either social, civil, or political, may furnish a sufficient illustration of the second class. If a factor, in consequence of his contingent liability to his employer, could not testify for him, as to a right claimed against a stranger as having resulted from the agency, or if a citizen of a state or county, in consequence of his common interest in whatever may affect the community of which he is a member, could not testify in behalf of his state or county, there would generally be but little if any hope of justice in any such cases. Ex necessitate therefore such persons are, in such cases, generally competent witnesses.
*13 In England, according to the common law, a rated parishoner was not a competent witness for his parish, on a question as to the settlement of a pauper, because the paupers of each parish, being supported altogether by the rated inhabitants of that parish, by increasing the pauper list, the amount of poor rates which- each rated inhabitant was bound to contribute was- correspondently augmented; and therejore, in every question of settlement, every such inhabitant was personally, directly and certainly interested. But, even according to the common law, which, in the foregoing particular, has been abolished since 1776, a mere liability to be rated for the support of the poor of his parish, did not render an inhabitant incompetent as a witness for the parish, on a question as to the settlement of a pauper, because his interest in the decision of the question was, not only common, but remote and contingent.
Then, if the question we are considering must be tested by the common law, it would seem that even a taxpaying citizen of Maysville may be a competent witness, for the city. His rate of contribution will neither be necessarily increased by a judgment against the corporation, nor necessarily reduced by a judgment in its favor. He will not be bound, as a matter of course, to contribute to the payment of a judgment against the corporation. His utmost interest would be a contingent liability to be taxed hereafter for contribution to the satisfaction of such judgment. The judgment would be a charge on the funds of the corporation; whatever that fund may be, large or small, adequate or inadequate, the citizens of Maysville have no» other interest in it than the citizens of every county and state have in the prosperity and resources of their respective counties and states. Nor would a judgment against the city necessarily increase the future rate of taxation on the citizens. The established rate may, perhaps, be sufficient; and then the payment of the judgment would only subtract from the city fund something which might, otherwise, be appropriated to some purpose of improvement or ornament; the interest in which is not of such a character as to render a citizen incompetent as a witness. The differ *14 ence between the interest in this case and that of a stockholder, is obvious and essential. The interest of a stockholder is certainly, immediate and direct.
Instructions, ante, p. 10.
The value of a commodity, for which a party is held accountable, is not its value to him, but its value to the party to whom he is accountable.
Wherefore, in consequence of the community, and remoteness, and contingency of the interest in the event of the suit,-citizens of Maysville, who are not otherwise incompetent, are competent witnesses for the city in this case; and therefore the Circuit Court erred in rejecting the witness offered by the plaintiff in error.
Third. A proper interpretation of the facts will sustain the opinion of the Circuit Judge on the motion to instruct the jury, as proposed, and as already stated.
By the contract, Shultz was to place the dirt where filling should be needed for making the street, so far as he was to grade it, — “ a good road;” and the evidence was sufficient to authorize the jury to find that he had done so. The fact, that the use thus made of the dirt was advantageous to himself, would not, per se, entitle the city to the incidental value to him of the dirt. Even if he had not been authorized to make the use he did make of the dirt, he would not have been accountable to the city for the value to himself: the value to the city would have been the criterion.
But we are inclined to think, that the accidental advantage to himself of using the dirt, as he did, and as he was, in effect, authorized and directed to use it, was considered in making the contract, and should have the effect, according to the proof, of entitling him, under the contract, to only what the work actually cost, and to no more, even though the estimated value of the work should exceed the amount actually expended by him in its completion.
The bill which he made out and presented, is evidence, against him, that the work cost no more than the amount of that bill. He is not, therefore, entitled to more. Nor will he be entitled to so much, unless he either prove the items, or, in the absence of such proof, shall show, that the value of the work is equal to the amount of his bill. This record does not exhibit any evidence of the exact amount of the bill. The only proof as to that fact, is that the bill amounted to some *15 thing more than four hundred dollars. But that is insufficient to shew that it was equal to the amount of the verdict, or would have justified that verdict.
These suggestions are made for the benefit of the parties on another trial: the assignment of errors does not complain that the evidence did not authorize the verdict.
Wherefore, for the erroneous rejection of the witness offered by the plaintiff in error, it is considered by this court, that the judgment of the Circuit Court be reversed, and the cause remanded for a new trial.